**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RANDY BRETON, SR.,

          Plaintiff,

  v.

COMMISSIONER ROLLIN COOK, WARDEN
RODRIGUEZ, LIEUTENANT JOHN DOE, and
CORRECTION OFFICERS JOHN DOE 1, JOHN
DOE 2, and JOHN DOE 3,

         Defendants.

3:20-cv-00247 (CSH)

MAY 13, 2021

## INITIAL REVIEW ORDER ON AMENDED COMPLAINT
## AND RULINGS ON PENDING MOTIONS

**HAIGHT, Senior District Judge:**

Plaintiff Randy Breton, Sr., a sentenced inmate, commenced this action *pro se* pursuant
to 42 U.S.C. § 1983 based on allegations of unreasonable strip search and sexual assault during
his intake into Northern Correctional Institution ("Northern"). He sues Department of
Correction ("DOC") officials Commissioner Rollin Cook, Warden Rodriguez, Lieutenant John
Doe, and Correction Officers John Doe 1, John Doe 2, and John Doe 3 in their individual and
official capacities. Doc. 1 at 1. According to Plaintiff's Amended Complaint, dated January 4,
2021, Plaintiff is currently incarcerated at Garner Correctional Institution ("Garner").[1]

---

[1] The Court takes judicial notice that Plaintiff appears to be incarcerated at Osborn Correctional Institution ("Osborn").
*See* Connecticut State Department of Correction Offender Inmate Search, http://www.ctinmateinfo.state.ct.us/ (last
visited May 13, 2021). This conflicts with Plaintiff's representation in his Amended Complaint that he is currently
incarcerated at Garner. Doc. 16 at 1. Whether Plaintiff is currently incarcerated at Garner or Osborn does not change
the outcome of the present rulings. However, Plaintiff is reminded that, if he changes his address at any time during the
litigation of this case, Local Court Rule 83.1(c)(2) provides that he must notify the Court. Failure to do so can result in
the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write
"PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to only put the new address on a letter without
indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers
in the notification of change of address. He should also notify the defendants or defense counsel of his new address. For
the present time, the Clerk is directed to send Plaintiff a copy of this ruling at both Garner and Osborn.

On review under 28 U.S.C. § 1915A, the Court dismissed all claims against Commissioner Cook and Warden Rodriguez but concluded that Plaintiff's Eighth and Fourth Amendment claims should proceed against Defendants Lieutenant John Doe, Correction Officer Doe 1, Correction Officer Doe 2, and Correction Officer Doe 3 (the "Doe Defendants") in their individual capacities.   Doc. 7 at 3-4, 8. So that the clerk can effect service on the Doe Defendants, the Court further instructed Plaintiff to obtain the "full names and current addresses" of the Doe Defendants through discovery and file an amended complaint identifying them on or before December 18, 2020.  *Id.* at 8.  The Court informed Plaintiff that his failure to identify the Doe Defendants "will result in dismissal of all claims in this action."  *Id.*  The Court extended Plaintiff's deadline for filing the amended complaint identifying the Doe Defendants until January 18, 2021.  Dkt. 11.

Thereafter, Plaintiff filed (1) a Motion for a Temporary Restraining Order, Doc. 12 at 1-9; (2) a Motion to Appoint Counsel, Doc. 12 at 12-16; (3) a Motion for Discovery, Doc. 14; (4) a Motion to Amend the Complaint, Doc. 15; and (5) the instant Amended Complaint, Doc. 16. This Ruling resolves these pending motions and enters an IRO on Plaintiff's Amended Complaint.

## I.  MOTION TO AMEND AND IRO ON AMENDED COMPLAINT

Plaintiff motions the Court to amend his complaint to include allegations that Commissioner Cook and Warden Rodriguez failed to "train security staff or [correction officers] not to assault inmates that [cooperate] with intake officers."  Doc. 15 at 2.

Plaintiff further notes that his "[statement] of claim will remain the same as the [incident] unfolded with the intake [Doe Defendants]," but the Doe Defendants "will not be named for now."  *Id.*  In line with claims in his Motion for Discovery and Motion to Appoint Counsel,

Plaintiff alleges that "Connecticut General Statute, Chapter 14, Sec. 1-210, Subsec. 18(C)" has prevented him from identifying the Doe Defendants through discovery and requests the assistance of an attorney to comply with the Court's order to do so.  *Id.* at 2-3.  Plaintiff intends to amend his complaint again "once he has reviewed the video discovery that he requested . . . in his Motion for Discovery."  *Id.*  Plaintiff's Motion for Discovery and Motion to Appoint Counsel will be discussed in greater detail *infra*.

As an initial matter, the Court grants Plaintiff's Motion to Amend to the extent that he seeks to file the instant Amended Complaint.[2]  Since the complaint in this action has yet to be served, Plaintiff may amend his complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1).  *See, e.g.*, *Nieves v. New York State Off. of Mental Health*, No. 20-CV-9502 (CM), 2021 WL 76210, at *1 (S.D.N.Y. Jan. 7, 2021) ("Plaintiff's complaint has not yet been served on Defendants, and he therefore does not need permission of the Court at this time to amend his complaint.").  Thus, the Amended Complaint is the operative complaint in this action, and it is subject to this Court's initial review pursuant to 28 U.S.C. § 1915A.

### A.  Standard of Review

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *2 (D. Conn. June 8, 2018).

---

[2] Plaintiff's Amended Complaint names only Commissioner Cook in the case caption.  Although Plaintiff has not named Warden Rodriguez and the Doe Defendants in the case caption  in compliance with Federal Rule of Civil Procedure 10(a), "courts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 313CV1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) (citing cases).  As the body of the complaint indicates that Plaintiff also intends the Doe Defendants as defendants, the Court construes the amended complaint as naming Commissioner Cook, Warden Rodriguez, and the Doe Defendants.

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim." *See Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)). Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court is not bound to accept "conclusory allegations." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Nor does a complaint suffice if it tenders "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 557).

If a plaintiff is proceeding *pro se*, it is well-established that his complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 Fed. Appx. 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, even when reviewing a *pro se* complaint, a court may not "invent factual allegations" that the plaintiff has not pleaded. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). A *pro se* complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim. *Id.* (citing *Harris v. Mills*, 572 F.

4

3d 66, 72 (2d Cir. 2009).

### B.  Summary of Factual Allegations in Amended Complaint

The factual claims in Plaintiff's Amended Complaint largely track the allegations in his Initial Complaint, Doc. 1.  On July 3, 2018, Plaintiff was brought from a transport van to the medical examination room at Northern.  Doc. 16 at 5.  After he was examined by a nurse as part of the intake process, the Doe Defendants escorted him to a holding cell for a strip search.  *Id.* Before undressing Plaintiff, the "Doe officers" restrained him for alleged security reasons.  *Id.* Correction Officer Doe 1 and Correction Officer Doe 2 pinned Plaintiff's wrists against the cell wall.  *Id.*  As the officers started to dress Plaintiff after the search, Correction Officer Doe 3, who was behind Plaintiff, did not put on Plaintiff's underwear boxers under his jumpsuit.  *Id.* Correction Officer Doe 3 then pulled up the jumpsuit zipper so as to deliberately catch Plaintiff's genitals, causing Plaintiff pain and damage in the genital area. *Id.* at 5, 7. Plaintiff characterizes this conduct as "sexual assault."  *Id.* at 7.

Several times after the incident, Plaintiff requested to see the medical staff for pain, but his request was refused, and he was ignored by staff for many days. *Id.* 7, 8.  As a result, Plaintiff has lived with pain and claims that he requires surgery as his left testicle has swollen to the size of a grapefruit.  *Id.* at 7.  He alleges that Commissioner Cook and Warden Rodriguez are responsible for the Doe Defendants' conduct due to their failure to screen prison staff, train the Doe Defendants not to harm inmates, protect Plaintiff from sexual assault, and put safety policies in place.  *Id.* at 7-9.  However, Plaintiff acknowledges that Commissioner Cook and Warden Rodriguez "were not personally involved" in the Doe Defendants' alleged conduct.  *Id.* at 8.

### C.  Discussion

The Court's IRO of the Initial Complaint noted that Plaintiff's claims for damages against any defendants in their official capacities are barred by the Eleventh Amendment, but he may recover damages against defendants in their individual capacities.  Doc. 7 at 3; *see also Hafer v. Melo*, 502 U.S. 21, 31 (1991) (stating that state officers are not "absolutely immune from personal liability under § 1983 solely by the 'official' nature of their acts" and finding that "the Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court"); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("The eleventh amendment immunity protects state officials sued damages in their official capacity.").  The Court also liberally construed Plaintiff's allegations as raising claims under the Fourth Amendment and the Eighth Amendment.  Accordingly, this ruling briefly recites the constitutional standards relevant to Plaintiff's claims concerning his alleged unreasonable strip search and sexual abuse.

To determine whether an isolated search infringed on an inmate's Fourth Amendment right of bodily privacy and was thus unreasonable, a court must consider four factors: (1) the scope of the particular intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted.  *Harris v. Miller,* 818 F.3d 49, 58 (2d Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  A strip search is unreasonable "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish."  *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citations omitted) (concluding that the plaintiff sufficiently alleged a strip search was unreasonable because "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate").

In line with the Court's findings in its IRO of the Initial Complaint, Plaintiff has

sufficiently alleged that the strip search conducted by the Doe Defendants was unreasonable. Doc. 7 at 5. Specifically, the Doe Defendants allegedly sought to harass and punish Plaintiff by restraining him, pinning his wrists to the wall, and zipping his jumpsuit in a way that caused him physical injury. Such conduct was not reasonably related to any legitimate penological interest. Therefore, Plaintiff has stated a claim against the Doe Defendants under the Fourth Amendment.

Regarding his Eighth Amendment claim concerning sexual abuse, the prison official's alleged conduct must be "objectively, sufficiently serious," and "the prison official involved must have a sufficiently culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citations and internal quotation marks omitted). To show that the prison official had the requisite state of mind, the plaintiff must allege that the defendants acted with "more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

In line with the Court's findings in its IRO of the Initial Complaint, Plaintiff sufficiently alleged that the Doe Defendants intentionally inflicted physical injury on him during the strip search as a form of punishment. Doc. 7 at 7. Plaintiff claims that Correction Officer Doe 1, Correction Officer Doe 2, and Lieutenant Doe restrained him while Correction Officer Doe 3 intentionally inflicted serious injury to Plaintiff's genital area. Accordingly, Plaintiff has plausibly stated an Eighth Amendment claim against the Doe Defendants.

However, the IRO of the Initial Complaint noted that Plaintiff's "sexual assault" allegations against Correction Officer Doe Defendant 3 "are conclusory even when liberally construed," so Plaintiff will be "permitted to file an amended complaint restating his Eighth Amendment claims on that basis." *Id.* Plaintiff's Amended Complaint asserts essentially the same allegations on this issue as his Initial Complaint, so his Amended Complaint has not

7

corrected this deficiency.  Plaintiff will be permitted to file an amended complaint restating his Eighth Amendment claim.  As ordered *infra*, Plaintiff must file such amended complaint on or before August 13, 2021.

Regarding Plaintiff's claims against Commissioner Cook and Warden Rodriguez, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).  To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).  Plaintiff also may not hold defendants liable for a constitutional violation committed by other defendants solely based on their "high position of authority in the prison system." *Wright v. Smith*, 21 F.3d at 501.

The Court previously dismissed both the Fourth and Eighth Amendment claims against Commissioner Cook and Warden Rodriguez because Plaintiff had not alleged any facts showing that they were personally involved with the strip search incident or had any awareness of the Doe Defendants' conduct toward Plaintiff.  Doc. 7 at 6-7.  Plaintiff's amended complaint has not corrected this deficiency and cannot satisfy *Tangreti*'s requirement that he plead the elements of the Fourth and Eighth Amendment claim against both Commissioner Cook and Warden

Rodriguez. *Tangreti*, 983 F.3d at 620. Accordingly, these claims must be dismissed against Commissioner Cook and Warden Rodriguez.

Finally, Plaintiff's claim that he was ignored by "staff" when he sought medical attention for alleged injuries resulting from the incident is not directed against any named Defendant or specific party. Therefore, Plaintiff has failed to state a claim upon which relief can be granted and this claim must be dismissed. *See, e.g.*, *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (upholding district court's dismissal of a complaint for failure to state a claim upon which relief may be granted where *pro se* plaintiff "failed to name any defendants").

### D.  Conclusion

In sum, the plausible claims that may proceed in the operative Amended Complaint are Plaintiff's Eighth Amendment and Fourth Amendment claims against the Doe Defendants in their individual capacities. All claims against Defendants Commissioner Cook and Warden Rodriguez, as well as claims that are not directed to any specific defendant, are DISMISSED for failure to state a claim.

## II.  MOTION FOR DISCOVERY

Plaintiff asks that the Court order the DOC to (1) give Plaintiff the last names only of the officers who were present during his intake at Northern and (2) make the footage of his intake into Northern, video NCI-VP-18-0526, available to Plaintiff so that he may view the nametags of each Doe defendant and discern each party's particular actions during the alleged assault. Plaintiff represents that he has been unable to access this information and therefore unable to identify the Doe Defendants in his Amended Complaint as the Court ordered in its IRO of Plaintiff's Initial Complaint. *See* Doc. 14 at 2; Doc. 15 at 1-3. He further claims that this

inability stems from "Connecticut General Statute, Chapter 14, Sec. 1-210, Subsec. (18)(C)." *See, e.g.* Doc. 15 at 1.

The record supports Plaintiff's inability to obtain the last names of the Doe Defendants from the DOC. Plaintiff received a letter dated August 7, 2018 from Northern Freedom of Information ("FOI") Liaison Officer Ferguson acknowledging his information requests pursuant to the Freedom of Information Act. Doc. 12 at 20. This letter lists "B (18) names of employees" under the headline "REDACTED INFORMATION Per CT General Statutes 1-210." *Id.*

Plaintiff also received a letter dated August 22, 2018, from Northern Administrative Capitan Brian Jackson regarding his "[v]ideo preservation requests dated 8/18/18." Doc. 12 at 17; *see also* Doc. 1 at 9 (Plaintiff's Video Preservation Request). The letter confirms that video NCI-VP-18-0526 "has been secured and contains video footage from a handheld camera of [Plaintiff's] intake into [Northern] on 7/31/2018." *Id.*[3] The letter further notes that future video preservation requests related to Northern can be made to Captain Jackson and that "[a]ny access to [NCI-VP-18-0526] video discs will require a court order, based on the sensitive nature of its contents, in accordance with Connecticut General Statute, Chapter 14, Sec. 1-210, Subsec. (18)(C)." *Id.*

Connecticut General Statutes § 1-210 contain the Freedom of Information Act ("FOIA") provisions addressing access to public records and exempt records. The provisions provide that the FOIA shall not be construed to require disclosure of records that the Commissioner of Correction "has reasonable grounds to believe may result in a safety risk, including the risk of harm to any person or the risk of an escape from, or a disorder in, a correctional institution or facility under the supervision of the Department of Correction." Conn. Gen. Stat. § 1-210(b)(18).

---

[3] This letter references the date of Plaintiff's intake into Northern as July 31, 2018, which matches Plaintiff's alleged date of intake in his Motion for Discovery. Doc. 14 at 2. However, it conflicts with Plaintiff's allegation in his Amended Complaint that his intake at Northern occurred on July 3, 2018. Doc. 16 at 5.

Further, the Commissioner may withhold requested records that the Commissioner believes are exempt from disclosure under section 210(b)(18) "when the record is delivered to the person's correctional institution or facility." *See id.* at § 1-210(c).

When a party does not produce documents as requested, Federal Rule of Civil Procedure 37 permits "'[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, No. 3:14-CV-572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)). *See also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989) (Where documents "discoverable within the contemplation of Rule 26, Fed. R. Civ. P., . . . are not produced," Rule 37 "permit[s] the party desiring discovery to seek a court order."). "It is firmly established that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *McCulloch v. Hartford Life & Acc. Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), *order clarified*, No. CIV. 3:01CV1115 (AHN), 2004 WL 1688529 (D. Conn. Apr. 26, 2004).

Parties are generally allowed to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevant evidence "has [a] tendency to make a fact more or less probable than it would be without evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Yet, "the Supreme Court has mandated that wide-ranging deference is to be accorded the operational considerations of prison administrators" and "[r]ecognized legitimate considerations include the ability of prison officials to ensure prison security against escape, maintain internal order and discipline, and further rehabilitation of

prisoners." *Respress v. Coughlin*, 585 F. Supp. 854, 857 (S.D.N.Y. 1984).

All "[m]otions relative to discovery are addressed to the discretion of the [district] court." *Soobzokov v. CBS, Quadrangle/New York Times Book Co.*, 642 F.2d 28, 30 (2d Cir. 1981). Discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citing, *inter alia*, *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943 (1991)).

Here, Plaintiff's request for the last names of the officers who were present during his intake at Northern is directly relevant to his claims against these officers. It is also not disproportionate to the Court's order in its IRO of the Initial Complaint that Plaintiff obtain the "full names and current addresses" of the Doe Defendants and file an amended complaint identifying them. Doc. 7 at 8. Similarly, Plaintiff's request to review footage of his intake into Northern is directly relevant and proportional to his claims, all of which are based on allegations of the Doe Defendants' conduct during this intake. As Plaintiff suggests, viewing this footage with the ability to "stop and start the video to see the nametags of the Doe Defendants and to see [which Defendant] did what" relates to his ability to identify these Defendants in an Amended Complaint. Doc. 14 at 3. Specifically, viewing the footage in this way would allow Plaintiff to match the names of each Defendant to that Defendant's actions during the alleged assault.

However, to the extent video NCI-VP-18-0526 also contains footage that is unrelated to Plaintiff's intake into Northern, this footage would not be relevant to Plaintiff's claims. Furthermore, the Court is mindful of the deference owed to DOC administrators in their efforts to maintain order in prison facilities. Accordingly, Plaintiff's access to video footage of his intake into Northern should comport with the safety needs of DOC facilities and incorporate the

security measures deemed necessary by the Warden at Plaintiff's current facility.

Therefore, Plaintiff's Motion for Discovery is GRANTED IN PART as follows.   The Court orders the DOC to produce the "full names and current addresses" of the Doe Defendants so that Plaintiff may comply with the Court's order to amend his complaint identifying this information.   Doc. 7 at 8.   The Court further orders the DOC to allow Plaintiff access to any footage of his intake into Northern contained on video NCI-VP-18-0526.   Plaintiff's ability to view this footage should be provided in a safe and secure way that allows Plaintiff a reasonable opportunity to observe identifying information such as nametags.

Based on Plaintiff's status as a *pro se* inmate and his initial efforts to obtain the identities of the Doe Defendants, the Court will afford him an additional period of time, to and including August 13, 2021, to identify the Doe Defendants and file an amended complaint with their names in the case caption.   Before this time elapses, Plaintiff should submit a discovery request, including this order, to the DOC.   Plaintiff's failure to identify the Doe Defendants within this timeframe will result in a dismissal of all claims in this action.

### III.  MOTIONS TO APPOINT COUNSEL

Plaintiff further requests an appointment of counsel to assist him with the identification of the Doe Defendants.   *See* Doc. 12 at 12-16; *see also* Doc. 15 at 4.   Plaintiff argues that "it is likely he will win his claim . . . [since] the video won't lie."   Doc. 12 at 15-16.   He represents that he has contacted "at least [six] different attorneys" to assist him with obtaining discovery to amend the complaint.   *Id.* at 12.   He states that he "also contacted [the Inmates' Legal Assistance Program] for more *pro bono* resources" but has not yet received a response.   *Id.* at 12-13.   The Inmates Legal Assistance Program ("ILAP") is an organization under contract with the Connecticut Department of Correction to provide legal assistance to inmates.   *See Swinton v.*

*Wright*, No. 16-cv-659 (SRU), 2016 WL 3579075, at *2 (D. Conn. June 28, 2016).  Plaintiff lists the six attorneys he has contacted, Doc. 12 at 12-13, and includes the letter he sent these attorneys, *id*. at 18-19.  As of December 2020, a lawyer from Day Pitney LLP and a lawyer from the State of Connecticut Division of Public Defenders have informed Plaintiff that they are unable to assist him. Doc. 15 at 5-6.

Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel. *See Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Rather, a district court has "broad discretion" when deciding whether to appoint *pro bono* counsel to an indigent civil litigant. *See Ferrelli v. River Manor Health Care Ctr*., 323 F.3d 196, 203 (2d Cir. 2003); 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel.") (emphasis added). Noting this discretion, the Second Circuit has cautioned the district courts against routinely appointing *pro bono* counsel. *See, e.g.*, *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) (stating that the courts should not appoint pro bono counsel "indiscriminately," because "volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily"); *accord Pena v. Semple*, No. 3:19-cv-124 (KAD), 2019 WL 6135445, at *3 (D. Conn. Nov. 19, 2019).

In determining whether to appoint *pro bono* counsel for an indigent litigant, a district court must first determine the "likelihood of merit" of the litigant's claim. *See Washington v. Artus*, 708 Fed. Appx. 705, 709 (2d Cir. 2017); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Additionally, the court must consider the litigant's ability and efforts to obtain counsel. *See Carmona*, 243 F.3d at 632; *Smalls v. Faneuff*, No. 3:17-cv-1739 (CSH), 2018 WL 7958890, at *1 (D. Conn. July 3, 2018); *Trahan v. City of New York*, No. 15 Civ. 4129

14

(CM), 2015 WL 4469559, at *1 (S.D.N.Y. July 15, 2015) (citing *Cooper*, 877 F.2d at 172; *Hodge*, 802 F.2d at 61-62). "The Second Circuit has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel." *See Hunnicutt v. Dinguis*, No. 3:07-cv-1628 (CSH), 2010 WL 2976195, at *2 (D. Conn. July 26, 2010) (citing *Hodge*, 802 F.2d at 61; *Gulley v. Dzurenda*, 686 F. Supp. 2d 173, 174 (D. Conn. 2010). Notably, courts in this district have repeatedly held that, "[a]bsent a denial of assistance by Inmates' Legal Aid Program or a showing that the assistance available is insufficient at this stage of litigation, the plaintiff cannot demonstrate that he is unable to obtain legal assistance on his own." *See Swinton*, 2016 WL 3579075, at *2; *accord Card v. Coleman*, No. 14-cv-830 (SRU) (WIG), 2014 WL 6884041, at *1 (D. Conn. Dec. 4, 2014).

On the present record, the Court has no basis to conclude that Plaintiff's claims are sufficiently meritorious to warrant appointment of *pro bono* counsel.  Moreover, pursuant to the Court's order on Plaintiff's Motion for Discovery *supra*, Plaintiff should be able to identify the Doe Defendants and amend his complaint without the additional assistance of counsel.  Until Plaintiff files an amended complaint identifying the Doe Defendants, the Court will be unable to conduct the analysis necessary to determine whether counsel should be appointed.  Notably, even when presented with a well-pleaded complaint, courts often lack information sufficient to "gauge the merits of Plaintiff's claims" at such an early stage of the litigation. *See, e.g.*, *Young v. Leon*, No. 3:14-CV-001337 (CSH), 2015 WL 3476822, at *1 (D. Conn. June 2, 2015) (denying the plaintiff's motion to appoint *pro bono* counsel, on the grounds that the court "cannot gauge the merits of Plaintiff's claims" on the plaintiff's motion, complaint and answer alone); *Campbell v. Lantz*, No. 3:19-CV-1512, 2019 WL 6771417, at *17 (D. Conn. Dec. 12, 2019) (noting that, given the "early stage of the proceedings" and "little proof presented," "the Court

cannot determine whether Plaintiff will be able to prove the allegations of his complaint—i.e., whether his claim possesses sufficient merit to warrant the appointment of counsel").  Therefore, to the extent that Plaintiff seeks assistance of counsel after filing his amended complaint, it would be wise for Plaintiff to consider refiling his motion at a later stage of the litigation on a more developed record.  Any renewal of this motion should be accompanied by an update regarding Plaintiff's attempts to secure legal assistance from the ILAP and the reasons why assistance was unavailable.

For the forgoing reasons, Plaintiff's Motion for Appointment of Counsel is DENIED without prejudice to refile.

### IV.  MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff motions the Court to enter injunctive orders (1) preventing Garner Warden Hannah from placing him in a double cell where he could lose power for his continuous positive airway pressure (CPAP) machine and increase his risk of contracting COVID-19; (2) preventing Garner Warden Hannah, Garner Deputy Warden Kenny, and Garner Counselor O'Donnell from threatening him, harassing him, transferring him, denying him legal materials, or taking any retaliatory action against him by preventing his access to the courts; (3) mandating that Warden Hannah provide him access to a copy machine; and (4) requiring that any search of his cell be video recorded to maintain the privacy and security of his legal papers and to prevent the placement of contraband resulting in disciplinary segregation.  Doc. 12 at 7-8.

The principal forms of preliminary injunctive relief are a preliminary injunction and a temporary restraining order. *See generally* Fed. R. Civ. P. 65. "[T]he traditional standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction . . . ." *Loc. 1814, Int'l Longshoremen's*

*Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (Roberts, C.J.) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). "The preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'" *Grand River Enter. Six Nations v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir.1985)).

"In this Circuit," the Court of Appeals has "repeatedly said that district courts may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets either of two standards: '(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor.'" *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019) (quoting *Kelly v. Honeywell Int'l Inc*., 933 F.3d 173, 134 (2d Cir. 2019)), *cert. granted*, 140 S. Ct. 660 (2019), *and rev'd and remanded on other grounds sub nom. Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020). Moreover, "[w]ith slightly different formulations, [the Second Circuit has] repeatedly stated that the serious-questions standard cannot be used to preliminarily enjoin governmental action." *Id.* at 637.[4]

"[W]here the movant is seeking to modify the status quo by virtue of a mandatory

---

[4] The Second Circuit observed that the Supreme Court included "four components" in its standard for preliminary injunction set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008): "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Trump*, 943 F.3d at 640 (quoting *Winter*, 555 U.S. at 20); *see also SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2d Cir. 2021) (citing *Winter*, 555 U.S. at 20); *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 188 n.2 (2d Cir. 2019) (citing *Winter*, 555 U.S. at 20), *cert. denied*, 140 S. Ct. 256 (2019). Yet, the Second Circuit further noted that "[i]t is not clear whether the Supreme Court intended courts to require these four components of the *Winter* standard in all preliminary injunction cases" because the *Winter* case concerned national security issues. *Id.* Moreover, the Second Circuit "did not believe that the Supreme Court had precluded [its] use of the two preliminary injunction standards that [it] had used for five decades." *Id.* at 641 (citing *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010)); *see also El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2019 WL 6606457, at *2 n. 4 (D. Conn. Dec. 5, 2019). Here, even if the Court were to employ the *Winter* standard, the outcome of the present decision would not change for the reasons set forth *infra*.

preliminary injunction (as opposed to seeking a prohibitory preliminary injunction to maintain the status quo), . . . the movant must also: (1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (internal quotation marks, footnotes, and citations omitted). "Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018), *cert. denied sub. nom. Demirayak v. City of New York, N.Y.*, 139 S. Ct. 1600 (2019) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983)).

Except in limited circumstances not relevant here, "a Court may not order injunctive relief as to nonparties to the action." *Allen v. Brown*, No. 96-CV-1599, 1998 WL 214418, at *3 (N.D.N.Y. Apr. 28, 1998); *see also Farah v. Richeson*, No. 3:19-CV-01247 (CSH), 2019 WL 4201066, at *1 (D. Conn. Sept. 5, 2019) ("The court must have in personam jurisdiction over a person before it can validly enter an injunction against her." (citing *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999)). "[I]t is fundamental that equitable relief pursuant to Fed. R. Civ. P. 65(b) requires a complaint alleging a federally cognizable claim against the party over whom the court has personal jurisdiction and against whom equitable relief is sought." *Jones v. J.C. Penney's Dep't Stores*, Inc., No. 03-CV-0920A(F), 2005 WL 1313442, at *2 (W.D.N.Y. May 31, 2005); *see also Mitchell v. Cuomo*, No. 917CV0892, 2017 WL 8780773, at *6 (N.D.N.Y. Dec. 6, 2017) ("The Court has no power to enforce an injunction against individuals who are not parties to the lawsuit. . . . To the extent that Plaintiff seeks injunctive relief against . . . any persons who are not parties . . . the Court lacks subject matter jurisdiction to enjoin their actions.").

"The request for injunctive relief must relate to the claims in the complaint." *Milner v.*

*Black*, No. 3:16-CV-1621 (SRU), 2017 WL 2661626, at *1 (D. Conn. June 20, 2017) (denying Plaintiff's request for injunctive relief based on confinement in punitive segregation when the underlying claims concerned medical treatment for seizures); *see also De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally" but an injunction is not appropriate if it "deals with a matter lying wholly outside the issues in the suit"); *Oliphant v. Quiros*, No. 3:09-CV-1771 (VLB), 2010 WL 2180780, at *1 (D. Conn. May 19, 2010) ("[T]he petitioner must establish a relationship between the injury claimed in the motion seeking injunctive relief and the conduct giving rise to the action.").

The Second Circuit reviews "denial of a preliminary injunction for abuse of discretion." *New York v. Griepp*, 991 F.3d 81, 102 (2d Cir. 2021) (citing *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 883 F.3d 32, 36 (2d Cir. 2018)). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Id.* "The district court thus has broad discretion in determining whether to grant or deny preliminary injunctive relief." *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2019 WL 6606457, at *4 n. 4 (D. Conn. Dec. 5, 2019) (citing *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005)). Additionally, "in the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)).

Plaintiff's requests regarding placement in a double cell, transfer, retaliation, and access to a copy machine seek injunctive orders against nonparties in this action who work at a different DOC facility from the one where the alleged assault occurred. Accordingly, the Court lacks

subject matter jurisdiction over these requests.  These requests are also entirely beyond the scope of Plaintiff's Fourth and Eighth Amendment claims in this matter, and his requested relief would unduly involve the court in prison administration.  Similarly, Plaintiff's general request that any search of his cell be video recorded to prevent Plaintiff's unjust transfer to disciplinary segregation ostensibly relates to employees at Garner, none of whom are parties to this action.  It also does not relate to Plaintiff's Fourth and Eighth Amendment claims, which involve an alleged assault at Northern.

Finally, to the extent that Plaintiff seeks injunctive relief due to alleged interference with his access to the court, the record shows that he has been able to file several motions, including his Motion for Extension of Time, Doc. 9, and his Amended Complaint, Doc. 16, within the applicable time period.  Accordingly, Plaintiff cannot show that he is likely to suffer irreparable harm absent the requested injunctive relief, and that he has a likelihood of succeeding on the merits.  Plaintiff's Motion for Emergency Temporary Restraining Order is therefore DENIED.

## V.  CONCLUSION

The Court has reviewed the pending four motions in this action and has entered an IRO on Plaintiff's Amended Complaint.  Based on the foregoing, the Courts ruling is summarized as follows.

Plaintiff's Motion to Amend, Doc. 15, is GRANTED as a matter of course under Federal Rule of Civil Procedure 15(a)(1). Plaintiff's Eighth Amendment and Fourth Amendment claims in his operative Amended Complaint shall proceed against Defendants Lieutenant John Doe, Correction Officer Doe 1, Correction Officer Doe 2, and Correction Officer Doe 3.  All claims against Defendants Commissioner Cook and Warden Rodriguez, as well as claims that are not directed to any specific defendant, are DISMISSED for failure to state a claim.

Plaintiff's Motion for Discovery, Doc. 14, is GRANTED IN PART.  The Court orders the DOC to (1) produce the full names and current addresses of the Doe Defendants and (2) allow Plaintiff access to any footage of his intake into Northern contained on video NCI-VP-18-0526.  Plaintiff's ability to view this footage should be provided in a safe and secure way that allows Plaintiff a reasonable opportunity to observe identifying information such as nametags. Plaintiff is afforded an additional period of time, to and including August 13, 2021, to identify the Doe Defendants and file an amended complaint with their names in the case caption.  Before this time elapses, Plaintiff should submit a discovery request, including this order, to the DOC. Plaintiff's failure to identify the Doe Defendants will result in a dismissal of all claims in this action.  Plaintiff's Motion to Appoint Counsel, Doc. 12 at 12-16, is DENIED without prejudice to refile, and Plaintiff's Motion for a Temporary Restraining Order, Doc. 12 at 1-9, is DENIED.

The Clerk is directed to send Plaintiff a copy of this ruling at both Garner and Osborn, *see* note 1, *supra*.

It is **SO ORDERED.**

Dated:   New Haven, Connecticut
         May 13, 2021

                                         */s/Charles S. Haight, Jr.*
                                         CHARLES S. HAIGHT, JR.
                                         Senior United States District Judge

21