**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RANDY BRETON, SR.,<br>Plaintiff,<br>v.<br>COMMISSIONER ROLLIN COOK, et al.<br>Defendants. | CASE NO. 3:20-cv-000247 (SVN) |

**INITIAL REVIEW ORDER ON AMENDED COMPLAINT**

Plaintiff Randy Breton, Sr., a sentenced inmate who is currently housed in the Connecticut Department of Correction ("DOC") Corrigan-Radgowski Correctional Center (Doc. 21), commenced this action *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983") based on allegations of an unreasonable strip search and physical and/or sexual assault during his intake into Northern Correctional Institution ("Northern") on July 3, 2018. In his initial complaint, he sued Commissioner Rollin Cook, Northern Warden Rodriguez, Lieutenant John Doe, and Correction Officers John Doe 1, John Doe 2, and John Doe 3 in their individual and official capacities. Compl., ECF No. 1 at 1.

On review under 28 U.S.C. § 1915A, the Court dismissed all claims against Commissioner Cook and Warden Rodriguez but concluded that Plaintiff's Eighth and Fourth Amendment claims should proceed against Defendants Lieutenant John Doe, Correction Officer Doe 1, Correction Officer Doe 2, and Correction Officer Doe 3. Initial Review Order, ECF No. 7 at 8. Plaintiff was instructed to file an amended complaint that identified the Doe Defendants.

Thereafter, Plaintiff filed an amended complaint that named only Commissioner Cook. Am. Compl., ECF No. 16. After the Court granted Plaintiff's motion to amend, the Court reviewed

Plaintiff's amended complaint, again under 28 U.S.C. § 1915A, which the Court construed as asserting claims against Commissioner Cook, Warden Rodriguez, and the Doe Defendants. Initial Review Order, ECF No. 17 at 3, n.2. On initial review, the Court determined that Plaintiff had stated plausible Fourth Amendment and Eighth Amendment claims arising from the Doe Defendants' intentional conduct to punish and inflict pain on Plaintiff during an alleged strip search. *Id.* at 7. However, the Court concluded that Plaintiff's sexual assault allegations were conclusory and permitted Plaintiff an opportunity to restate this claim in a second amended complaint. *Id.* at 7-8. The Court dismissed Plaintiff's claims against Commissioner Cook and Warden Rodriguez because Plaintiff had not alleged their direct personal involvement in the asserted Fourth and Eighth Amendment violations as required by *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). *Id.* at 8-9. The Court noted that Plaintiff had also alleged that he was ignored by staff when he sought medical attention for his alleged injuries, but that Plaintiff had not directed this Eighth Amendment medical indifference claim against any specific party. *Id.* at 9. Finally, the Court instructed Plaintiff to file a second amended complaint ("SAC") that identified the Doe Defendants in the case caption by August 13, 2021. *Id.* at 21.

Plaintiff timely filed the SAC (ECF No. 25), naming as defendants Captain Adam Hollister, Correction Officer Zachary Wehr,[1] Correction Officer Matthew Fryer,[2] and Correction Officer

[1] Plaintiff has spelled this defendant's name as Zachay in the case caption, but the allegations of the complaint indicate that this defendant's first name is Zachary. *See* SAC at 3. The clerk is instructed to correct the spelling of this defendant's name on the court docket.

[2] Plaintiff has spelled this defendant's name as Metthew in the case caption, but the allegations of the complaint indicate that this defendant's first name is Matthew. *See* SAC at 3. The clerk is instructed to correct the spelling of this defendant's name on the court docket.

Nathan Collier (who is now allegedly a State Trooper). SAC at 2-3, 9-10. Plaintiff requests damages and a medical assessment of his injuries.[3] *Id.* at 11.

The Court now conducts its initial review of the SAC under 28 U.S.C. § 1915A.

## I. Standard of Review

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005); *see also Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016). Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007). A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court is not bound to accept "conclusory allegations." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S at 557).

[3] The court notes that Plaintiff has specified that he only sues Collier in his official capacity on a failure to intervene claim. SAC at 10, ¶ 5. He also alleges to be suing Fryer in his "individual capacity only" for a failure to intervene, but he also states that he is not suing Fryer in his "individual capacity" because he does not believe that Fryer acted intentionally. *Id.* at ¶ 6. As Plaintiff's intent is not clear, the Court construes the complaint most liberally to assert individual capacity claims against all Defendants.

If a plaintiff is proceeding *pro se*, it is well-established that his complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, even when reviewing a *pro se* complaint, a court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d 2010). A *pro se* complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim. *See id.* (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

**II. Summary of Factual Allegations in the Second Amended Complaint**

Plaintiff's factual allegations in the SAC are largely similar to his complaint (ECF No. 1) and amended complaint (ECF No. 16). The Court accepts these factual allegations as true for purposes of the initial review.

On July 3, 2018, Plaintiff was transferred from Garner Correctional Institution to Northern for an Administrative Segregation hearing. SAC, ¶ 1 (Facts). He was brought from the transport van to the Admitting and Processing ("A.P.") rooms and a medical intake office. *Id.*, ¶ 2. After examination in the medical intake office, Plaintiff was escorted by Defendants then-Lieutenant Hollister, Correction Officer Collier, Correction Officer Fryer, and Correction Officer Wehr to a holding cell for a security strip search. *Id.*, ¶ 3, ¶ 1 (Statement of Claim). Correction Officer Fryer and Correction Officer Collier pinned Plaintiff's wrists against the cell wall, while Correction Officer Wehr stood behind Plaintiff and conducted the strip search. *Id.*, ¶ 1 (Statement of Claim).

When Correction Officer Wehr started to dress Plaintiff after the strip search, he failed to put on Plaintiff's underwear boxers under his jumpsuit, although it is the practice at other facilities to put boxers on the inmate under the jumpsuit. *Id.* Instead, he only dressed Plaintiff in a yellow jumpsuit, and pulled up the jumpsuit so as to catch Plaintiff's genitals, causing Plaintiff pain and damage in the genital area. *Id.*, ¶ 2. Plaintiff's testicle became swollen to the size of an orange. *Id.*

In the A.P. Room holding cell, Plaintiff watched a Prisoner Rape Elimination Act ("PREA") video prior to his escort to Administrative Segregation; he informed the Defendant correctional officers that he needed to see medical staff. *Id.*, ¶ 3. Defendant Hollister however, ignored his request for medical attention and failed to take any steps to check Plaintiff's injury. *Id.*, ¶ 3.

**III. Discussion**

This Court's prior initial review orders provided that Plaintiff's claims for damages against any defendants in their official capacities are barred by the Eleventh Amendment, but he may recover damages against defendants in their individual capacities. ECF No. at 7 at 3; ECF No. 17 at 6. *See Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("the eleventh amendment immunity protects state officials sued for damages in their official capacity"); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (stating that state officers are not "absolutely immune from personal liability under section 1983 solely by the 'official' nature of their acts.").[4] In addition, the Court now notes that any official capacity claims for injunctive relief against Defendants, who were allegedly DOC

[4] Plaintiff alleges that he is suing Defendant Collier in his "official capacity only" under a failure to intervene theory. SAC at 10, ¶ 5. Plaintiff notes: "I am not suing this man [in] his individual capacity because I do not believe his neglect to request Capt. Adam Hollister['s] intervention was one of deliberate indifference." *Id.* But claims for damages against any correction officer defendants in their official capacities are barred by the Eleventh Amendment. The Court therefore liberally construes Plaintiff's claim against Collier as one brought against Collier in his individual capacity.

employees working at Northern, are moot because Plaintiff is currently housed at Corrigan-Radgowski Correctional Center. *Licon-Vitale*, 2021 WL 124320, at *1 (D. Conn. Jan. 13, 2021) ("In the Second Circuit, an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility."). Thus, Plaintiff's request for an order that the specific Defendants currently named send Plaintiff for a medical examination is now moot.

In the instant amended complaint, Plaintiff advances claims for damages for violations of his constitutional rights. In line with the Court's prior initial reviews, the Court construes Plaintiff's allegations as asserting Fourth and Eighth Amendment violations.[5] In addition, the Court construes Plaintiff's allegations to raise state law claims of assault and battery.

**A. Fourth Amendment**

To determine whether an isolated search infringed on an inmate's Fourth Amendment right of bodily privacy and was thus unreasonable, a court must "balance the need for the particular search against the invasion of personal rights that the search entails." *Harris v. Miller,* 818 F.3d 49, 58 (2d Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). To that end, the Court must consider four factors: (1) the scope of the particular intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted. *Id*. Generally, strip searches "have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." *Jean–Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citations omitted).

[5] Plaintiff's SAC asserts violations of his Eighth and Fourteenth Amendment rights. SAC at 9, 12. As a sentenced prisoner, however, Plaintiff's claims arising from the alleged physical and/or sexual abuse and medical indifference are considered under the Eighth, rather than Fourteenth, Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

A strip search is unreasonable, however, "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Id.* (concluding that the plaintiff sufficiently alleged a strip search was unreasonable because "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate").

Officers are liable if they fail to intervene and stop a constitutional violation by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.").

Plaintiff's SAC sufficiently alleges that Officer Wehr conducted the strip search in an unreasonable manner by pinning Plaintiff to the wall, dressing him without boxer shorts, and "yanking" up his jumpsuit in a manner that caused him a physical injury. As previously noted in the prior initial review order, based only on the allegations of the SAC, "[s]uch conduct was not reasonably related to any legitimate penological interest." Initial Review Order, ECF No. 17 at 7. Construed most broadly, Plaintiff's allegations also suggest that Lieutenant Hollister and Officers Fryer and Collier (who were allegedly present and would plausibly have been aware that Defendant Wehr failed to provide Plaintiff with his boxer shorts and "yanked" up the jumpsuit) had the opportunity to intervene to prevent Officer Wehr from continuing with his conducting the search in such an unreasonable manner. Thus, for initial pleading purposes, the Court will permit the Fourth Amendment claims for damages to proceed against Defendants Wehr, Fryer, Collier and Hollister in their individual capacities.

**B. Eighth Amendment Claims Based on Physical and/or Sexual Abuse**

Regarding his Eighth Amendment claims based on physical abuse, the prison official's alleged conduct must be, "objectively, sufficiently serious," and "the prison official involved must have a sufficiently culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citations and internal quotation marks omitted). For a misuse of force claim, an inmate must allege that the force was inflicted for malicious and sadistic reasons rather than in a good-faith effort to maintain or restore discipline (the subjective element). *See Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016) (*per curiam*). In the context of a claim of sexual abuse, "the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind" where no legitimate law enforcement or penological purpose can be inferred from a defendant's alleged conduct. *Boddie*, 105 F.3d at 861. "[M]ere negligence" is not sufficient to support an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Here, Plaintiff's amended allegations indicate that Officer Wehr intentionally "yanked" the jumpsuit up to catch Plaintiff's genitals. SAC at 9, ¶ 2. The Court assumes, for purposes of this initial review and construing Plaintiff's allegations liberally, that this conduct was "objectively, sufficiently serious." *See* Boddie, 105 F.3d at 861. Additionally, Plaintiff has sufficiently alleged, for purposes of this initial review, that Officer Wehr applied force and intentionally sought to abuse Plaintiff for purposes of inflicting injury to Plaintiff's genitals without any legitimate penological reason. Accordingly, Plaintiff's allegations are sufficient to raise plausible Eighth Amendment claims based on a misuse of force and/or sexual abuse against Officer Wehr. At this initial stage in the matter, consistent with the prior discussion above, the Court will also permit Plaintiff's Eighth Amendment claims to proceed against then-Lieutenant Hollister and Officers Fryer and Collier for failure to intervene to prevent the misuse of force and/or alleged sexual abuse.

**C. Eighth Amendment Medical Indifference**

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The defendants also must have been "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute cruel and unusual punishment. *Farmer*, 511 U.S. at 838.

Plaintiff has alleged that he informed the correctional officer defendants and then-Lieutenant Hollister about his need for medical attention for his injuries sustained as a result of having his genitals caught in the jumpsuit, which caused his testicles to swell to the size of an orange. SAC at 9, ¶ 3. For purposes of initial review, the court assumes that Plaintiff suffered from an objectively serious medical need.

His allegations that Defendant Hollister ignored his request for medical attention and failed to check his injuries are sufficient to state a plausible claim of Eighth Amendment medical indifference. *Id.* In addition, his allegations indicate that Defendants Wehr, Collier, and Fryer were aware of his injuries but failed to provide him medical assistance. *Id.* For initial pleading purposes, the Court will permit Plaintiff's Eighth Amendment medical indifference claims to proceed against Defendants Hollister, Wehr, Collier and Fryer in their individual capacities for damages.

**D. Assault and Battery**

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another." *Dewitt v. John Hancock Mut. Life Ins. Co.*, 501 A.2d 768, 770 (Conn. App. Ct. 1985). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *German v. Dzurenda,* No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334, n.3 (1975)). Here, Plaintiff's allegations that Officer Wehr intentionally acted to catch Plaintiff's genitals in the jumpsuit are sufficient to raise a plausible state law claims of assault and battery.

**IV. CONCLUSION**

The Court issues the following orders:

(1) For the foregoing reasons, this case may proceed on Plaintiff's Fourth Amendment claims against Captain Hollister, Correction Officer Wehr, Correction Officer Collier, and Correction Officer Fryer in their individual capacities for damages; on his Eighth Amendment claims based on misuse of force and/or sexual abuse against Captain Hollister, Correction Officer Wehr, Correction Officer Collier, and Correction Officer Fryer in their individual capacities for damages; on his Eighth Amendment medical indifference claims against Captain Hollister, Correction Officer Wehr, Correction Officer Collier, and Correction Officer Fryer in their individual capacities for damages; and on his state law assault and battery claims against Correction Officer Wehr.

Any official capacity claims are DISMISSED.

(2) The clerk shall verify the current work addresses of Captain Adam Hollister, Correction Officer Zachary Wehr, Correction Officer Nathan Collier,[6] and Correction Officer Matthew Fryer with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the SAC (ECF No. 25) and this Order to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the SAC (ECF No. 25) and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to this amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order, specifically June 15, 2022. Discovery requests need not be filed with the court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

[6] Plaintiff alleges that Defendant Collier is now a State Trooper with an address at 111 Country Club Road, Connecticut State Police, Middletown, Connecticut, 06457.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order, specifically July 15, 2022.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is **SO ORDERED** this 17th day of December, 2021 at Hartford, Connecticut.

*/s/*
SARALA V. NAGALA
United States District Judge